on behalf of the appellant defendant, you may proceed. Good morning, Your Honor, to counsel, may it please the court, Pete Spillers, the appellant Melvin Moore. A trial court sentence is entitled to deference and it won't be reversed absent an abuse of discretion, but this authority is not unfettered and this court is not a rubber stamp to affirm any sentence that is imposed. I think this case is one of the unique cases where a minimum sentence in the class X range would have satisfied the purposes of rehabilitation, retribution, and protection of the public. First, I think Mr. Moore has an excellent chance of rehabilitation. Mr. Spillers, I think you have an excellent chance of rehabilitation. I think you have an excellent chance of rehabilitation. Before we get into that, can we deal with a threshold issue? You did not file a post-sentence in motion. I should say the trial attorney on the trial level didn't file a post-sentence in motion challenging the sentence, correct? Correct. So we would have to entertain this as a plain error matter, right? Yes, Your Honor. In order to get to the plain error matter, we would have to first find that there was a clear and obvious error before we get into the plain error analysis, correct? Correct. So tell us in the first instance, before we get into the merits of it, how we find that there was a clear, obvious error that occurred here in the sentence in proceeding? Well, I think the sentence was an abuse of discretion for several reasons. I think if we're going to be a plain error. I don't want to pressure you to this point, but whether or not the court made the right decision, if you suggest arguably you're saying that they made the wrong decision, didn't consider the merits of all these mitigating evidence, but where was the clear error? Does an abuse of discretion amount to a clear, reversible error? Well, I think in the case of plain error for sentencing, we say if the evidence is closely balanced on whether a lengthy sentence or the sentence that was imposed was the evidence on each side of aggravation and mitigation, is what the courts have held will satisfy plain error or will allow this court to review it as plain error. And I think in this case, it was closely balanced as far as sentencing. As far as factors in aggravation and mitigation that will allow this court to review it as plain error. As far as a clear and obvious error, I mean, I think this is a sentencing error that affects someone's substantial rights as well. And any sentence, I think this court has authority under 615 as well to review a sentence if it so chooses. Well, we can review a sentence, but here it wasn't preserved. So the only way we can really work the error or the issue wasn't preserved either by a post-judgment motion. So now we're looking strictly at what was the error. Did the court consider something it should not have? Did the court discount something it should not have? I mean, what did the court do that was wrong? Well, I think the court did not give proper weight to the mitigating evidence. And I think also one thing that I think that the court did in this case that I would say was wrong and would ask this court to review is it considered mental health issues and aggravation in this case. For someone like Mr. Moore, whose mental health issues are the result of serving his country, I think that is an important issue that could be addressed by this court under the Plain Act doctrine. So, But Ballard does say that it can be aggravation, it can be mitigation. I mean, it kind of depends on the service case. Yes, Your Honor. And I think that if we look at Ballard, what it says is, well, we want to look at an aggravating factor. If we were to look at a mental health issue as aggravating or mitigating, the question is whether it evokes compassion because of the lessened culpability or it represents future dangerousness. And I think that in this case, this court should look at it as something of a lessened culpability that should evoke the compassion of this court rather than a representation of future dangerousness. And I think there are several reasons for that. One, I think if you look at the cases of State Sykes, Ballard, Bylaz, and Holman, where they say, yes, we're going to look at mental health issues as aggravating, they're all very dangerous criminals with very serious criminal histories of violence against others. And in those cases, I think it was appropriate to say this mental health issues, if there are, if they do exist, represent future dangerousness. Now, Mr. Moore, I don't think, is in that category. And I think this court should look at the fact that Mr. Moore has never committed a crime against an individual, like these other cases the state relies on, not trying to diminish the possession of a stolen motor vehicle or arson. And I understand arson is a serious crime. But I don't think he represents the incorrigible defendant who's going to be a future danger to the citizens. Basically, I think his life stands in very direct contrast to those cases or to the idea that his mental health issues should be considered aggravating. I think there's a stigma in society on mental health. And I would ask this court to only apply it as an aggravating factor in cases where there is something about the mental health issues that could indicate future dangerousness to others. You know, and again, if I can interject, you've indicated that you're saying that the court considered the factors, at least according to the record, but failed to get them sufficiently. And you've honed in on the ones you believe. The court obviously didn't. But at the end of the day, under the case law, when you're challenging a sentencing decision and asking for reversal, I think the case law indicates you need to show that the ultimate sentence was manifestly disproportionate to the nature of the offense. This was a 6 to 30 range? Yes, Your Honor. The defendant was sentenced to 10 years? Yes, Your Honor. Well, tell us why that sentence was manifestly disproportionate to the offense committed. Well, I think this is a 3 to 7 crime. Now, he was elevated because of his prior possession of a stolen motor vehicle. But those convictions were two decades old. So I think if you look at the fact that he had spent the prior two decades living a crime-free life, working, supporting his family, so where do we end up elevating this based on what? Well, we've already used those. We can't really argue that it shouldn't have been elevated. The elevating offenses were minimal. They were not crimes of violence conceitedly. But the sentencing range that you start out with here is 6 to 30. How you got there, you're still 6 to 30, right? Yes, Your Honor. Minimum 6. He got 10. Yes, Your Honor. So why is it disproportionate? Well, I think that the legislature has set the minimum sentence in this extended range at 6. Now, people have been skeptics that sometimes a minimum sentence is appropriate to satisfy retribution. In that case, they reduced the murder conviction, the murder sentence, from 30 to 20. They said that in that case, because of specific facts of that case, there was an abuse of discretion to sentence the defendant to 30 years when he could have gotten 60. And I think this is one of those unique cases where I think it is one abuse of discretion to elevate this. I get that he was eligible for 6 to 30, but I still think this was a case that cried out for the minimum sentence when you look at the whole of Mr. Moore's life. You have a serious offense committed, correct? Yes, Your Honor. Arson, potential danger to other people, right? Yes, Your Honor. So isn't the offense here? Well, again, it brought to our attention the fact that the qualifying felonies were not crimes of violence. This was. So how do you respond to that? Well, I think the judge even said in this case that he did not intend to hurt anyone. Now, yes, there is inherent danger in arson, and I understand. That's why it is a felony offense, punishable by 3 to 7 and 6 to 30 in the extended range. But I do think it was not something that should, you know, the seriousness of the crime is there, but I also think that Mr. Moore has many other mitigating factors that show he should have been sentenced in the minimum. Well, basically the same. Your argument of all the military service, the law-abiding life of many years, the totality of the mitigating evidence you are saying you believe completely outweighs any aggravating evidence, therefore it should have been more to the minimum. In this case, yes, Your Honor, I do believe this was an abuse of discretion. I realize that it is not common for the appellate court to reverse sentences. But this court does have the authority, and like I said, when people do sentence, it was a serious crime. It was a murder, and they felt that the minimum sentence was appropriate because of the background of that defendant and his chance of rehabilitation. And I think Mr. Moore has a great chance of rehabilitation, and I don't necessarily think putting him in prison for a longer time is going to aid in that rehabilitation. I understand punishment, retribution is also part of the purpose of the sentence, but I think in this case a minimum sentence would have been appropriate to satisfy retribution. Judge Collins appeared to take the position that after reading the evaluation that had occurred and the defense had asked to be part of this particular sentencing process and listening to the defendant himself, that this wasn't necessarily a crime of passion, this wasn't necessarily a crime of, okay, I've had enough, I'm going to go do this. This was contemplated. This was something he got angrier and angrier about that may or may not be consistent with PTSD, that may or may not be consistent with what I think by all reading was a pretty tough life even before the military. But if you're going to have that anger that sort of takes it out of, it's a conscious decision, I think, to be angry is what she was saying, and therefore I appreciate your problems, but you made this decision and you knew what you were doing, and therefore you're entitled, well, entitled is the wrong word, but therefore I'm going to impose this sentence. Well, I understand that, and it was definitely, you know, the trial court did not entertain an insanity defense, and this is not a case where we're arguing that Mr. Moore was out of his mind, he didn't know what he was doing, and therefore he shouldn't be held responsible. I think he, of course, should be held responsible, but the question is how much, and I think the judge, I think, looked at that and said, yes, this was deliberate, okay, and then the state argues maybe that shows that he can't be trusted in society because there are stresses and that maybe this will occur again, but I think if you look at Mr. Moore's life, I mean, the state notes that there's stress in work, there's stress in life, which I agree, and Mr. Moore has never done anything like this, and, of course, I'm sure he's had disputes. I think this was an anomaly, and I think that another aspect of this where I think a minimum sentence would satisfy retribution and protection of the public is I think we have to look at Mr. Moore was 62 years old when this occurred. He's 65 now. Prison is brutal on hard-earned 20- and 30-year-olds. Mr. Moore had been working and supporting his family for 20 years, and now he's been taken from that and he's been put in prison. He's been put in this tough environment. Once again, I'm not saying he shouldn't have been punished. I'm saying at what level, and I think that this will satisfy retribution and protection of the public and rehabilitation because I think Mr. Moore, let's just say I think this sentence will really make it clear to him that he can't act this way again. He hasn't acted this way before, granted the possession of stolen motor vehicles, but like I said, I think this was an anomaly, and I think the judge speaking to his deliberateness, well, of course this was a knowing crime, and I'm not arguing he didn't intentionally do it, so I think that's already factored into the sentencing range of 3 to 7 or 6 to 30 for the extended range. Well, some people commit arson because they're paid for it. Some people commit arson because they just happen to be there. Some people commit arson because they are physically or mentally disabled. She's saying I accept all those other things that you've told me, but you built up to this. She didn't say it was, you know, necessarily premeditated, but she said this is you were just angry. You can't do things like this when you're angry, and that's what I'm going to impose this sentence for. Yes, I agree. I think we all agree that Mr. Morshi didn't punish him, and, you know, I think, you know, I don't know how much we give it to the fact that he was angry. It doesn't justify it. I don't know if it necessarily explains it. If he did it for money, I don't necessarily, you know, that actually could be an aggregating factor according to the sentence of the code, committed a crime for money. So, I mean, I guess I just believe that in this case, yes, this was a deliberate crime, but given the totality of Mr. Morshi's life, given his age, given his, I think, a lack of future dangerousness, that a minimum sentence in the extended range would have satisfied all of these purposes of protection of the public, retribution, and rehabilitation. Did the trial court treat the mental health issue as aggravation? Well, it's not exactly clear, but I think if you really look at what happened, yes, I believe it did. But the trial court didn't make any comment on it, correct? Well, he said, you know, it's like you need to spend this time in prison, so maybe you'll get the mental health help you need, or he said to that effect. So I guess we don't know for sure, but it sure seems to me like he's saying, well, you need to go to prison so that you can get this mental health help. And I don't think... In the end, if he was tacitly conceded, under the case law, it could be, depending on the totality of circumstances, considered to be aggravation or mitigation, correct? Yes, Your Honor. No case law says it has to be always considered to be mitigated. Yes, Your Honor, I totally, I agree with that, and I think once again, though, I think, I would ask the court to be careful when we start to say people's mental health issues, especially things like, this isn't like Ballard, where part of his mental health issue is his addiction, and she refused to see that. I totally agree with you, and I think, fortunately, today we're moving into the modern trend to, it needs to be addressed as an underlying cause of many criminal behaviors, and I think that's a good thing. But I'm just pointing out that the case law itself does say that, it doesn't direct the court to treat it one way or the other. It directs the court to treat it assertively, depending on the totality of the factors. Yes, Your Honor, and on this case, if I may finish, I would ask this court to find that, in this case, it was an abuse of discretion. If you take a Vietnam veteran who has some issues, but who was able to, for the most part, live a good life, I think that this court should say, no, we're not going to put that as aggravating evidence, or we're going to say that this should be mitigating evidence, and if the court doesn't give proper weight to that mitigating evidence, it is an abuse of discretion. All right, thank you. Ms. Swiss? Good morning, Your Honor. Mr. Counsel, may it please the court. Getting to the point right away of whether this is plain error, it has to be clear and obvious. It has to be something above an abuse of discretion. Abuse of discretion would be the standard, of course, to show there's some error, but it has to be clear and obvious. And in this case, unlike the case that, I think it was the Hillier case, that the defense counsel cited in his brief, where it's a procedure error or something of that sort where you can say this is an error and therefore it had some effect on us, now we just have to look in terms of whether it's clear and obvious. Here, I think it's been made clear, especially in the reply brief of defendant, that they're not arguing that the trial court didn't consider something it should have. There was never an argument, even in the opening brief, that it considered something inappropriate. That could be clear and obvious, could it not? It could possibly be, yes. The case law says that's an abuse of discretion. When a trial court in sentencing does not consider a factor of mitigation, it's supposed to consider that is an abuse of discretion. That's right. So your argument that an abuse of discretion can never rise to clear an obvious error probably is not correct because in that situation it probably can, correct? Well, there's a difference between saying that the trial court has these obligations to consider the factors in mitigation and aggravation, and if you didn't consider or she didn't consider the factors in mitigation, that could be an error which I think could possibly be clear and obvious. But here, despite someone looking at the opening brief in which counsel said that some factors weren't considered, in the reply brief in response to how I argued it in terms of the presumption that the trial court considers what's in front of it and that there's no showing to the opposite degree that, in fact, it didn't consider anything or something appropriate, the reply brief really totally and clearly says that's not our argument. Our argument is a weight argument, and the trial court just didn't weigh this properly. Did the trial court treat the mental health evidence issues as aggravation? To some degree it probably did in this sense. It considered that, but it goes beyond the mental health issue. It goes to what the defendant did not do about his mental health issue if, in fact, he hadn't. So the trial court considered it in this way. If you have it, if, in fact, that has the bearing that you're telling us it has on your life in terms of not being able to get along with people, in terms of not being able to deal with things and suddenly, you know, exploding in a way that you can't control, then what have you been doing for 40 years? Because for 40 years there's no sign that you've been treating it. And, in fact, there's been some services offered which you declined. And, in fact, this was building up this very incident for six weeks. You knew you were getting out of control. You know, early on it must have been apparent to his wife who told him that he should walk away from this job. He decided no, he wanted this job no matter what because it was at the holidays. And he put himself in that position for six weeks, mulled over this, and said he couldn't control the rage that kept building and building and building. He did nothing during that time to address, you know, what was happening to him either. So it's not that necessarily the trial court said you have a mental health issue that's aggravating in that sense. Certainly that's not what the trial court said or meant. But the trial court did look to if, in fact, you have this and if, in fact, this has an influence, which the trial court found that it didn't have much influence here for the reasons that Justice Hutchinson vocalized a few minutes ago. It didn't really seem to apply here in terms of a mitigation. But in terms of is this likely to recur? If you don't take care of your mental health issues and they have some bearing on your conduct and cause you to do criminal offenses, it is an aggravating factor. Can you tell us specifically, in light of his argument that he was a law-abiding citizen for over two decades in prior military service, can you tell us specifically, in summary form, why this sentence was not disproportionate to the nature of the offense? Well, because of the nature of arson and also the circumstances of this offense. So the nature of arson being that it caused a threat to people who come to respond, not even the person whose car, Dwayne Montgomery, it didn't even have to be her, somebody close by that saw it that would try to put it out. But normally with a fire, you're going to have first responders. And that puts them in physical danger. On top of that, in this case, defendant came out under the cloak of darkness to commit this crime. So he came out at a time, at 1030 at night I believe it was, in a time when you would expect that people might very well be at home, might very well be asleep, came to a car that was parked next to the house and set it on fire, then ran from the scene and tried to get rid of the incriminating evidence by throwing it into a dumpster. He left a burning car at a time when it could very well have spread, caused other problems. Now, fortunately for them, they had a dog that barked and drew their attention to outside. They saw the car and were able to have it extinguished. But these are aggravating circumstances in themselves. The nature of the crime is such that it can threaten people. And in this case, the way it was performed certainly aggravated that, I believe. So there is that. And then on top of it, we have a defendant who, excuse me, shows no understanding even of why he did it. This is what he said, if I may read from his comments at sentencing. Something happened to me that night. I mean, it got out of hand. I don't know what it was. It wasn't good. And I did what I did. And he suggests a couple times that he really doesn't understand what happened here. He just knows that what he did was against God. So does he have remorse? Well, in some sense, he does. You know, in that he believes he's a God-fearing person and that what he did wasn't right. But he doesn't seem to understand the impact that it had on the victim. He never talks about the person whose car, you know, he put up in fire. And he never talks about, you know, the effect that it might have had on her, despite the fact that she had lupus and was stressed by this event, which is understandable. Somebody intentionally setting something of yours on fire. And that's never addressed by the defendant. Instead, what we have is that this defendant, despite the fact that, yes, and the court recognized that, in fact, the prior crimes were not those of violence and that they were remote in time. Nevertheless, the circumstances here where it's a work dispute, basically. Now, is it a terrible work dispute? Certainly under the defendant's perception, it is. But it isn't anything other than somebody mistreating you, if defendant misbelieved to everything he suggests was being done to him. It's somebody who's not treating you well, somebody who you don't want to work for as an employer. But those type things do arise. And, yes, you know, the fact that it's been a long time, that was a factor in mitigation. And the trial court said it considered exactly that. So the fact that this sentence is where it is on the lower end, there's a 24-year range here from 6 to 30. And in that, he got an additional four years from the minimum. This is not a case such as Busse, which is the case that defendant has cited in his reply brief. In Busse, it was a First District case in 2016 where the First District reduced to the minimum a defendant's sentence much like this. He was a mid-joke offender and subject to 6 to 30 years. He got 12, unlike our defendant who got 10. But in that case, it was a person who committed a crime that really had no potential for safety concerns for anyone. He was basically fishing coins out of a coin-operated machine, and he had $44 to show for it. And that's the type of crimes he had been committing his whole life. That's a very different instance than committing an arson and an arson under the conditions which this defendant committed this offense. So for that reason, we would say that even under an abuse of discretion standard, that this court should determine that there was none, certainly under plain error, that this was not plain error, and should find this to be forfeited, this entire issue. Thank you very much, Ms. Williams. Thank you, Your Honor. Mr. Segrow, can you address the Court now? Counsel, if I could ask you right off the bat. Sure. Opposing counsel said in your reply brief you made it clear that your argument is strictly a weight argument. Is that true? Well, the argument I wanted to make in the reply brief was that sometimes the Court considers improper factors in aggravation and mitigation, which I think it probably did in this case, in my opinion. But even if it doesn't, this Court can still overturn the sentence. In Bucy, the appellate court specifically said the trial court considered all the factors in aggravation and mitigation, but it still found the sentence to be an abuse of discretion. So I don't think a sentence is prevented from judicial review just because the Court considered the factors. It's whether it properly applied those factors. Is there any evidence here that rebutts the presumption that the trial court considered all the factors in aggravation and mitigation? Again, how the Court considered it, the weight the Court gave it, I understand your argument, but is there anything in the record that rebutts that presumption? Well, I don't know if we can 100 percent rebutt that. I do think the fact that he was speaking of things, and the trial court was outlining some of the reasons for his sentence, and it completely ignored his military history. I think that's something I guess we can't prove for sure, and I understand that. But I guess that's what I would say is even in Bucy where it's like the trial court did consider all that, it was still found to be an abuse of discretion. So I don't think, you know, there is this presumption, but I don't think it's an irrebuttable presumption. And if you look at the majority of cases that I've dealt with, usually the trial court says, I've considered the factors in aggravation and mitigation, and here's my sentence. I don't think that means that that sentence is non-violable and can't be reviewed by the reviewing court. I want to say one other thing about Bucy real quick is that the crime was probably less chance of dangerousness, although there's always a chance of dangerousness when police respond to any sort of burglary or whatever. But that defendant in that case had seven prior felony convictions. And so there was a lot of aggravating evidence in that case, and the reviewing court still found there was an abuse of discretion, which I think in this case, you know, even if this court finds that there is some aggravating evidence, I don't think it prevents it from finding that he should have been entitled to a minimum sentence. Last point I'd like to make is that counsel is correct that arson has the potential of dangerousness. Like this case did, every arson does. That's why it's a felony. That's why it's punished by 3 to 7 and then 6 to 30 for the extended range, for the class 6 range. So I don't think that that was a uniquely aggravating factor of this arson is that there was a potential for danger, because I think then that would be every arson has the potential for danger. So do you see a plain error case? I, you know, I don't believe, I apologize. I'm not sure on that, Your Honor. My recollection is it wasn't. But let's assume for a minute it wasn't. I'll look at it again, but assume it wasn't. Is your, I wouldn't say your burden here, but is your argument here, does it have to be a little more because you have to get over the clear and obvious error as opposed to just simply an abuse of discretion? I mean, I get that if you say something's an abuse of discretion, does that automatically mean it's a clear and obvious error? I don't know. I mean, I think an abuse of discretion is a very high standard. I think that if. Yeah, it's usually defined as no reasonable person would agree or it was arbitrary, unreasonable, and not based on the evidence. That is a pretty high standard. I'm just trying to get the intersection of those two right now. You know, I'm not sure that I have an answer for you right now about exactly what, how the court's looked at that standard for. I mean, and I do know some of the courts will just look at sentencing issues and say plain error is whether the evidence about the sentence I've received was closely balanced. And so I think under that problem of plain error, the evidence was closely balanced. When we look at the totality of the history of what was aggravated and mitigated evidence, and that would allow this court to review it as plain error. So, I mean, I would just ask this court. I think this court does have the authority to review it as plain error. I would ask this court also to consider it that someone with mental health issues from military service who has not committed crimes of violence against others, that that should be considered mitigating evidence, not aggravating evidence. And it was an abuse of discretion to basically said, we'll sentence you to a long prison term so you can get the mental health help you need. Is that what you said? No, thank you. Well, thank you. I appreciate it. Thank you. I'd like to thank both counsel for the quality of their arguments on this case here this morning. The matter will, of course, be taken under advisement in a written decision. We'll also issue a due course.